IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANTHONY E. FINLEY, SR.                                                           PLAINTIFF

V.                                    NO. 12-3087

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Anthony E. Finley, Sr., brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed his application for DIB on July 17, 2009, alleging an inability to work since April 24, 2009, due to arthritis in the spine of the back, finger joints and toes; neck pain; numbness in his face, arms, legs, and left side of his chest; fatigue; depression; ringing in ears; fibromyalgia; short term memory loss; back pain; and hands swelling. (Tr. 124-125, 183, 187). An administrative hearing was held on December 16, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 46-71).

By written decision dated April 26, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe -

degenerative disc disease in the lumbar spine. (Tr. 6). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairment did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 8). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of medium work. (Tr. 8). With the help of the vocational expert (VE), the ALJ determined that Plaintiff was capable of performing past relevant work as an extruder operator, trash driver, sub assembler and youth attendant in children's home. (Tr. 14).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on May 23, 2012. (Tr. 20-22, 23-25). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and is repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence

AO72A
(Rev. 8/82)

exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ committed error in failing to find Plaintiff's fibromyalgia a severe impairment; and 2) The ALJ erred in his RFC determination. (Doc. 9).

### A. Severe Impairment:

Plaintiff contends the ALJ erred in not finding his fibromyalgia was a severe impairment. An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989).

In this case, it appears Plaintiff was diagnosed with fibromyalgia on December 5, 2007, by Dr. Safwan Sakr, of Baxter Rheumatology Clinic. (Tr. 514, 519). Dr. Sakr also found that Plaintiff had fair curl and grip in both hands, slight discomfort in neck extension, normal rotation, both hips rotated well in the acetabelum,[1] and all other peripheral/axial joints were unremarkable and revealed fair range of motion. (Tr. 519). Dr. Sakr also indicated "Fms tender

---

[1] Acetabulum - A cup-shaped depression on the external surface of the hip bone, with which the head of the femur articulates. Stedman's Medical Dictionary 11 (28th ed. 2006).

points 11/18." (Tr. 519). Dr. Sakr recommended aquatic pool three times per week; Lexapro 10 mg; and Flexeril 10 mg. (Tr. 519). On December 12, 2007, Dr. Sakr again assessed Plaintiff with FMS (fibromyalgia syndrome). (Tr. 513).

On May 21, 2008, Plaintiff saw his treating physician, Dr. Michael Hagaman, for follow-up of his fibromyalgia. (Tr. 399). Plaintiff continued to have some pain, and Dr. Hagaman reported that he had a lengthy conversation with Plaintiff about his fibromyalgia. (Tr. 399). He said he was going to increase Plaintiff's Lexapro and noted that Plaintiff had an appointment to see Dr. Sakr, his rheumatologist, the following month. (Tr. 399).

On June 20, 2008, Plaintiff saw Dr. Sakr, complaining of pain in his hands. (Tr. 418). Dr. Sakr reported that Plaintiff's FMS was better on Lyrica, and that he had osteoarthritis in his left hand. (Tr. 418).

On December 19, 2008, Dr. Sakr saw Plaintiff and reported that he was "doing better" with good response, but was complaining of myalgia. (Tr. 417).

On March 20, 2009, Plaintiff saw Dr. Sakr, who reported that Plaintiff's fibromyalgia was "doing well" and that Plaintiff had "OA in both hands." (Tr. 416). Hand x-rays taken on March 25, 2009, revealed "unremarkable hands." (Tr. 402).

On June 26, 2009, Dr. Sakr reported that Plaintiff was doing well on his current regimen. (Tr. 415).

In the ALJ's decision, the ALJ addressed Plaintiff's fibromyalgia at length. (Tr. 32). He ALJ noted that Plaintiff was referred for aquatic pool therapy three times per week and prescribed Lexapro and Flexeril, and instructed to return to care in twelve weeks. (Tr. 32). The ALJ concluded:

> Because the claimant's fibromyalgia is well-controlled with the current regimen and does not cause more than a minimal limitation in the claimant's ability to perform basic physical work activities it is determined to be nonsevere.

(Tr. 33).

The Court notes that in his Function Report dated August 1, 2009, Plaintiff indicated that he took his children to activities, picked small projects for the day like cleaning windows, vacuuming the floor, and that he went to night church. (Tr. 226). He also indicated that he loaded the dishwasher, put clothes in dressers, made the bed, cleaned windows, fertilized the grass, sprayed the grass for bugs, went outside daily, shopped for groceries, ran errands, delivered bills, went to the bank, went out to eat at restaurants, went to church members' homes to visit, and spoke to friends and family on the phone weekly. (Tr. 226-230). He reported he was on the building committee at church, and rotated as a greeter. (Tr. 230).

The Court recognizes that Plaintiff contended that his condition worsened in his Undated Disability Report- Appeal. However, there is no indication that Plaintiff sought any further treatment from his rheumatologist after June 26, 2009, when Plaintiff was reported as doing well on his regimen. This, coupled with the fact that Plaintiff reported having a relatively active daily life, leads the Court to believe that his fibromyalgia would have no more than a minimal effect on his ability to work.

Accordingly, the Court finds there is substantial evidence to support the ALJ's finding that fibromyalgia is not a severe impairment.

**B.     RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R.

§404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ found that Plaintiff had the RFC to perform the full range of medium work. (Tr. 34-40). He discussed all of the medical records, including those of the treating physicians, the agency physicians, and Plaintiff's own description of his limitations. The ALJ gave little weight to the opinions of Dr. Vann Smith and Dr. Nancy Bunting, who rendered opinions regarding Plaintiff's mental capabilities. (Tr. 39). The ALJ also noted that Dr. Sakr, Plaintiff's rheumatologist, and Dr. Michael Hagaman, Plaintiff's treating physician, did not document any referral for specialized psychiatric care. Nor did they make any referral for the need for more bodily care. The ALJ further concluded that Plaintiff had severe impairments which did limit his functionality, but that his testimony regarding fairly active daily activities, the conservative treatment which he had received, the evidence that his impairments were stable, the x-rays showing mild degenerative changes and relative lack of any recent treatment of

import, revealed that Plaintiff would not be precluded from performing within his RFC assessment. (Tr. 39-40).

The Court believes that the ALJ was warranted in giving little weight to the one time examinations of Dr. Smith and Dr. Bunting, and in considering more heavily the opinions of Dr. Sakr and Dr. Hagaman, who suggested conservative treatment.

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's RFC assessment.

## IV. Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 2nd day of October, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE